FILED

JUL 1 6 2015

7-16-15

THOMAS G. BRUTON

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTRN DIVISION

Ming J. Chen ,

      Plaintiff,

          V.

Urban Partnership Bank, as assignee for the Federal
Deposit Insurance Corporation, as Receiver for
Shore Bank.

        Defendant.

)  15CV6233
)  JUDGE CHANG
)  MAG. JUDGE MARTIN
)
)
)
)  Jury Demand

---

## COMPLAINT

Plaintiff Ming J. Chen brings this compliant under the Real Estate Settlement Procedure

Act ( " RESPA"); the Truth in Lending Act ( " TILA"); Title VIII of the Civil Rights Act of 1968

( " Fair Housing Act"); the Equal Credit Opportunity Act ( " ECOLA"); the Home Ownership

and Equity Protection Act ( " HOEPA"); the Illinois Consumer Fraud Act" ); and Illinois

Common Law.

In addition, Lender have sold the loan , and continue servicing the loan , now using

servicing right as ownership right to conduct foreclosure on borrower's home. Defendants'

carelessness and overt fraudulent acts have caused plaintiff not only to be deemed ineligible for

modification of her mortgage loan but also has caused her to suffer wrongful sale of her home and

resulting serous mental illness.

Pursuant to 28 U.S.C. 1746 in concurrence with her sworn statement submitted and

made of part of this complaint , plaintiff states the following :

I.     Jurisdiction and Venue

1.  This court has subject matter jurisdiction pursuant to RESPA, 12 USC Sec. 2607 et seq.,

and accompanying federal regulations, 24 CFR Sec. 35. 00. 14(c) . 28 USC Sec. 1331;

1

TILA, 15 USC Sec.1601, et seq., 12 CFR Sec. 226.18, and Regulation " Z" @ 226.18(d); HORPA, 15 USC Sec. 1638 et seq.; 42 USCA Sec. 1981; 28 USCA Sec. 1343, Title VIII of the Civil Right Act. Of 1968 ( " Fair Housing Act. "), as amended by the Fair Housing Amendments of 1988, 42 USC Sec. 3601-3609; the ECOA, 15 USC Sec. 1691-1691f; and pursuant to the court's supplemental jurisdiction, the Illinois Consumer Fraud Act, 815 ILCS Sec. 505 et seq. ; and Illinois Common Law.

2. Venue is proper as the plaintiff resides in , the defendants do business and have major places of business in , the act s complained of occurred in , and the property in question is located within the district and division of this court.

## II.   The parties

Plaintiff

3. Ming J. Chen ( hereafter, " Ming " ), an Asian –American , citizen of the United States . A retired senior, in April 2004, the time she took out the subject loan , she was Inexperienced in ways of finance, mortgages, loans and unlawful schemes and practices connected with them.

Defendant

4. Urban Partnership Bank , purportedly legally chartered in Chicago, as a Community Development Financial Institution , is a corporation engaged in the origination and servicing of " subprime " mortgages and regularly files foreclosure actions in federal and county courts within the division and district of this court.

## III.   Statement of Facts

5. In April 23, 2004, Ming took out a Home Equity Line of Credit (HELC) from South Shore Bank to refinance her home , the loan document depicted that it was a 10 years

2

interest only loan. It was assigned a loan number of 541777, but no where on the loan documents stating the interest rate and monthly payment.

6. On September 5ᵗʰ, 2005, the subject loan was refinanced by Shoe Bank into $200,000.00 Loan , with 30 years fixed term , and a monthly payment of $1,529.75, interest rate of 5.5% and with an APR also 5.5% . The note was not endorsed, and no " Notice of Right to Cancel " was given, and no appraisal report was given to the borrower .

7. On about end of 2010, Ming received a notice from Circuit Court of Cook County, indicating that one of her other property which was also financed through Shore Bank was being sold for delinquent taxes, and redemption was expiring on 4/8/2011.

8. Ming subsequently contacted Shore Bank loan department , by calling and calling , but Was failed to be able to reach anyone. Because the loan account with Shore Bank ,the property tax was including in monthly loan payment , Shore Bank was the one responsible for paying the property tax on time when due.

9. On 12-2010 Ming got hold of Ms. Lackie Vargas of Shore Bank , talked to her about the Tax Sale issue, she promised will get back to her. Ming waited and waited, but no answer ever came.

10. On 12-10-2010 Ming called Shore Bank again , and was told that Mrs. Elizabeth Luevano was the one in charge of paying property taxes. So Min g faxed to her about the issue. But after that fax , nothing came back either as usual .

11. Thru much effort and struggling and frustration of unable to get answer from Shore Bank, So on February 16, 2011, Ming retained an attorney, Ms. Angela R. Fink from Evans, Loewenstein, shmanovsky and Moscardini, Ltd. To contact Shore Bank on her behalf. But still get no answer . ( Exhibit ____).

3

12. On March 11th, 2011, Ming get a casher' check from her Chase Bank of $7,114. 54 and paid Cook County Clerk to clear the delinquent property Tax issue. ( Exhibit __)

13. On 6-9-2011, After paying the delinquent property tax , Ming wrote a letter to the bank asking to Refund the property tax money, but as usual , got no response.

14. On 7-7-2011, Ming wrote a letter again asking the refund of property tax money, with return receipt singed by Shore Bank , still get no answer.

15. After paying that $7,114. 54 delinquent property tax , Ming starting having difficulty paying her mortgages, while she was still hoping that Shore Bank can immediately refund that money so she can be able to pay her monthly mortgages. Unfortunately , the bank just kept silent with no answer provided . At that point , Ming was severely suffered with mental worries about her home mortgage payment.

16. Eventually, the fund that Ming have access to pay mortgages was much depleted . In September 2011, she was unable to pay her house mortgage, therefore defaulted.

17. As information provided and believed that Shore Bank filed bankruptcy on 2010 and FDIC was assigned as receiver. And On October 20, 2010 Urban Partnership Bank ( hereafter " UPB ") entered into a Purchase and Assumption Agreement with FDIC, and become the owner and take over Shore Bank . ( Common Record )

18. On December 14, 2012 UPB filed the subject foreclosure suit against Plaintiff, Ming. That is when the wrongful foreclosure started and Ming's mental and emotional turbulence begin. ( Common Record)

19. On June 1st, 2011 , Ming wrote a FDCPA –Fair Debt Collection Practice Act- and QWR- Indicating that Lender had 20 days to acknowledge receipt of my QWR and 60 days to reply. But Ming get no answer from UPB.

20. On October 31, 2011, Ming wrote another FDCPA & QWR 2nd time, get no answer from UPB either.

21. On January 5th, 2012 , Ming received a letter from Ms. Clea Coburn of UPB indicating that Ming can call her at 773-420-4772 to discuss further. Ming called cannot reach her. Ming called again on January 30, 2013 and talked to Audrey Swith Band ( not sue the correct spelling ) he said someone will get back with Ming. But no answer after that . ( Exhinit___).

22. On October 18, 2012, Ming received a letter from UPB attorney , John K. Gerrity , saying that $199, 695.47 was owed and attached a copy of mortgage and note and consider dispute closed and collection activity proceed. UPB did not answer any of Plaintiff's QWR at all , no related accounting was provided, Ming considered that debt was not verified.

23. On November 18, 2012 , Ming send UPB a Demand to Cease and Desist Collection Activities prior to Validation of Purported Debt , demanding UPB to stop debt collection ( Foreclosure ) before validation of debt. But Ming get no answer.

24. On around middle month of 2014 Ming contacted a local federal registered loan modification agent , and submitted an application for loan modification with UPB thru the agency( NID Housing Counseling Agency), and it said will inform plaintiff the outcome . Waited for a long while, did not receive any answer , Ming contacted the agency on January 2015, Mrs. Diana M. Simmons said " UPB did not respond even they placed countless calls ". And Mrs. Simmons also indicated her agency had never succeed in loan modification with UPB. ( Exhibit ___).

25. On September 23, 2014, UPB did send Ming a " Notice to the Home Loan Applicant- Credit Score Information Disclosure ", on which , it did not say the loan application was denied or approved , or any reason . It only disclosed me of my Equifax credit score. ( Exhibit ___).

26. On April 28th, 2014 Default judgment was entered in favor of UPB and against Ming. ( Common Record ).

27. On December 11, 2014 , A sheriff sale of Ming 's home was conducted , and was sold To the highest bidder , UPB of $164,800.00 ( Exhibit ___).

28. On February 5th,2015 , order approving report of sale was entered over Plaintiff's strong objection .

29. On March 2nd, 2015 Plaintiff filed a Motion to reconsider of approval of sale, and a hearing Date was set on May 8th,2015.

30. On April 6th, 2015 while the Motion to Reconsider the approval of Sale was still pending , Ming suddenly received a Forcible and Detainer Eviction suit Summon and Complaint from some " Illinois Asset Management Services, LLC, as Agent for Jeff BV-SFH, LLC", trying to evict my family members as " unknown occupants ". ( Exhibit ___).

31. Obviously, UPB has already illegally sold my house to " Jeff BV-SFH, LLC while the Motion for Reconsideration of Sale was still pending in Chancery Court.

32. Since the wrongful foreclosure started on December 14, 2012, Ming has been struggling with high blood pressure, high cholesterol , pre-diabetes , mental Illinois , anxiety...etc. and has been seeking medical professional treatments ..

## IV.    Claim for Relief

First Claim – Illinois  Consumer & Deceptive Business Practices Act.

33. Plaintiff repeats and realleges paragraphs 1-33 as if fully repeated here.

34. The Illinois Consumer Fraud & Deceptive Business Practices Act. ( " Consumer Fraud Act."), 815 ILCS Sec. 505.2, Provides:

Unfair methods. . and unfair or deceptive acts or practices, including but not limited to the use or employment of any  deception, fraud, false pretense, false promise,

6

misrepresentations or the concealment, suppression or omission of any material fact, with intent that others rely upon ( the same)...are hereby declared unlawful whether any person has in fact been misled , deceived or damaged thereby.

In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to section 5(a) of the Federal Trade Commission Act.

35. Defendant engaged in deception, consumer fraud by intentionally , knowingly and recklessly failed to pay property taxes when it was due from the mortgage account , in which the fund was escrowed and paid by Ming monthly. Because of defendant's intentional error caused Ming used all of her operating capital to pay delinquent taxes, derived the results that Ming was unable to pay her house mortgage and eventually defaulted . ( Exhibit ___).

36. Section 5 of FTC sets standard for determining what is unfair or deceptive :

An act or practice may be found to be unfair where it " cause or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by counter benefit to consumers or to competitions.

" A representation, omission or practice is deceptive if it is likely to mislead a consumer Acting reasonable under the circumstances and is likely to affect a consumers conduct or decision regarding a product or services .

A. The act or practice must cause or be likely to cause substantial injury to consumers.

B. Consumers must not reasonably be able to avoid the injury.

C. The injury must not be outweighed by countervailing benefits to consumers or to competition.

7

D. Public policy may be considered.

E. A three part test is used to determine whether a representation, omission, or practice is

'deceptive ". First , the representation , omission. or practice must mislead or be likely to mislead the consumer. Second , the consumers interpretation of th representation omission or practice must be reasonable under the circumstances. Lastly, the misleading representation ,omission or practice must be material .

37. Defendant willfully neglected of paying Ming 's property tax ,which were due from 2006, 2007, and 2008. And after Ming had paid to redeem those delinquent taxes on March 2011, had urgently requesting Defendant to refund , Ming had tried for 3 years and 6 month, Defendant playing " silent skills ", caused Ming house being foreclosed and sold . Ming has been suffering mental and emotional and physical damages . Defendant engaged in deception, consumer fraud, false pretense , false promise, misrepresentation and concealment , by intentionally, knowingly and recklessly not paying escrowed property tax for 3 years. That is a violation of 815 ILCS Sec. 505.2

## Second Claim -TILA VIOLATIONS -

38. Plaintiff repeats and realleges paragraphs 1-  .

39. Defendants failed to disclose to the Plaintiff prior to the closing of the loan as described above, the cost and the nature of the terms of credit offered to her, including a reliable description of the components of finance charges and material terms of her loan , the rate or effective rate of interest, the period , the schedule of amounts to be repaid or any other terms of the loan , including right to cancel , failed to give her a copy of a TILA statement at least three days prior to the closing of her loan, given a wrongful APR, failed to give Ming an appraisal report , all in violation of TILA, 15 USC Sec. 1639.

8

## Third Claim –Equal Credit Opportunity Act-

40. The equal Credit Opportunity Act. 15, U.S. C. Sec. 1691, provides :

   " (a) Activities constituting discrimination.  It shall be unlawful for any creditor to

   discriminate against any applicant , with respect to any aspect of a credit transaction  – on

   the basis of race, color , religion, national  origin , sex  or marital status , or age ( provided

   the applicant has the capacity to contract)…"

41. Plaintiff  will prove her claims of defendant's  violations of the ECOLA, in part, through a

   statistical analysis  of defendants' loan transactions, based on quantitative  data obtained

   from defendants' loan files.  For their actions as described above, defendants have violated

   the ECOLA.

## Fourth  Claim  - Defendant was Unjustly enriched through wrongful foreclosure -

42. Plaintiff repeats and reallege paragraphs 1-    as if fully  repeated here.

43. Illinois law implies a covenant of good faith and fair  dealing in all contracts between parties

   in the State of Illinois.  As a result of the actions of  defendants , set forth in detail below,

   defendant has violated the covenant of  good faith and fair dealing contained in the

   mortgage contract as described below and are subject to actual and punitive damages :

   A.  In August 20, 2010  Shore Bank was closed by Illinois Department of Financial and

      Professional Regulation which in turn appointed FDIC as receiver . FDIC then entered

      into a Purchase and Assumption Agreement with UPB to assume  all of the deposits of

      ShoreBank.

   B.  On December 14th, 2012 UPB filed the present foreclosure complaint .  UPB in its

      complaint stated its capacity to suit  " As the owner and legal holder of the Mortgage

      and Note …." .  And the note was endorsed in blank by Daniel Hollowed , then as

9

Chief Operating Officer , without date. ( Exhibit _____ ).

C. On April 18, 2013, Ming located Daniel Hollowed via the telephone and email . During conversation , Mr. Hollowed indicated that he had attached his electronic signature to the note. But said he did so on 2006, and not 2010 or 2012. He also indicated that he endorsed the subject note so that it could be sold to Fannie Mae. Which was going to securitize the subject mortgage . ( Exhibit _____ ).

D. UPB complaint provided an Assignment of Mortgage , which was assigned by FDIC to UPB, dated on November 6th, 2012. While subject note was already sold to Fannie Mae on 2006 as Mr. Hollowed stated. The Assignment of Mortgage was prepared by Defendant , UPB attorney , which committed a violation of Illinois Rules of Professional Conduct, Rule 3.7 Lawyer as Witness. The subject Assignment of Mortgage was signed by Maureen Bismark, and witnessed her signature by a notary of Laurie Edwards , and without date , it was a violation of Illinois Public Notary Act. ( Exhibit _____ ).

E. Daniel Hollowed left Shore Bank before August 20, 2010. He did not endorse the Note to UPB in 2010 or 2012, he did the endorsement on 2006. Obviously the Note and Mortgage were separated. Therefore the Promissory Note had become a non secured instrument attached. It made the subject promissory note an unsecured instrument, naturally UPB cannot foreclose the subject mortgage, since it had no valid Assignment of Mortgage attached to the Note, because the note was being endorsed in blank to Fannie Mae in 2006.

F. We see the note was sold to Fannie Mae on 2006, the mortgage did not transfer until 11-6-2012. The note was pointing to Fannie Mae, and the mortgage was pointing to UPB ( according to the complaint ). Therefore UPB cannot foreclose the subject loan .

10

An entity foreclose a mortgage must possess the Note and the Mortgage at the same time (Carpenter v. Longan, 83 U.S. 16, Wall. 271, 1872).

G. Besides, the Daniel Hollowed signature was a stamped signature, it needs authenticating . U.C.C. Article 3-401. Signature. (b) A signature may be made (i) manually or by means of a device or machine, and (ii) by the use of any name , including a trade or assumed name, or by a word, mark, or symbol execute or adopted by a person with present intention to authenticate a writing . Here, the Note was endorsed in blank by Daniel Hollowed, as the above U.C.C. 3-401(b) indicated that signature needed authenticating. Without proper authenticating the endorsement is void.

H. Now, the UPB claiming that they are the owner and legal holder of the Note. In fact they do not own , It was sold to Fannie Mae on 2006. When the note was endorsed in blank to Fannie Mae, because the Note was endorsed in blank , therefore, UPB took advantage of it by saying " they are the holder of the note ". In reality endorsed in blank is a requirement of Fannie Mae loan purchase guide, so that Fannie Mae can pool the loan with other thousands of loans ( securitize) and sell to Wall Street.

I. As stated above, non of UPB's documents support its standing , in other words , UPB had no standing to bring the subject foreclosure suit. Naturally the summary judgment and judgment of foreclosure and sale in favor of UPB entered on April 28, 2014 must be vacated and the subject foreclosure suit must be dismissed with prejudice.

44. Neither ShoreBank nor UPB were and are licensed in Illinois to originate or servicing Residential Mortgage pursuant to Illinois Residential Mortgage Licensing act of 1987, ( 205 ILCS 635/1-4). The Act states :

11

A. ( a-1) A person who is exempt from licensure pursuant to paragraph (ii) of item (1) of the subsection (d) of Section 1-4 of the Act as a federally chartered savings bank that is registered with the Nationwide Mortgage Licensing System and Registry may apply to the Secretary for an Exempt Company Registration for a the purpose of sponsoring one or more individuals subject to the mortgage loan originator licensing....

B. Unless ShoreBank or UPB is holding an " exempt company registration ", they were not and are not allowed to servicing the loan, Pursuant to U.S. Rule 214. Therefore , Ming require that UPB production of " Exempt Company Registration " for the open court investigation. Until UPB satisfy to produce the original Note and Exempt Company Registration, it lacks the required standing to foreclose the subject mortgage.

C. First Mortgage Company, LLC v. Dina (2014), Ill. App. (2d) 130567 (2010 CH 2877) held that the failure of a non-exempt lender to obtain the required license under the License Act rendered the mortgage agreement void as against public policy .

45. An assignee of FDIC does not automatically qualify as holder of note or mortgage, it needs lender authorization to do the transfer. ( Bank of New York v. Alderazi, (2011), Supreme Court , Kings County, NY), it held :

A. An assignment by an agent (receiver) without authority from the principal is a nullity ;

B. There is no evidence that original lender, ShorBank authorized FDIC to transfer the subject mortgage to UPB;

C. PUB has failed to meet the very basic requirement that proof of an agent authority must be shown from the mouth of the principal not from the agent. ( Lexow & Jenkings, P.C. v. Hertz Commercial Leasing Corp., 122 AD2d 25, 4504 N.Y. S. 2d

12

192 ( 2ⁿᵈ Dept. 1986);

D. UPB has not shown that it owned the note and mortgage, it has no standing to maintain this foreclosure action .

46. UPB is not the holder in due course-UCC section 3-302(c) states : " Except to the extent a transferor or predecessor in interest has rights as a holder in due course, a person does not acquire rights of a holder in due course of an instrument taken by (i) legal process or by purchase in an execution, bankruptcy..*** (iii) as the successor in interest to an estate or other organization."

Since UPB took over ShoreBank as Assignee form FDIC ( in Defendant's complaint ), but FDIC was not the holder in due course, UPB had no right of holder in due course, therefore UPB did not have the right of holder in due course. As UCC- 302 (c) indicated.UPB can only sue the one sold it the loan, which was FDIC or ShoreBank, but cannot sue the borrower, the Plaintiff, Ming. Also UPB did not get the authorization from ShoreBank to transfer the Note and Mortgage to UPB ( Too bad UPB should have asked Shorebank to transfer the mortgage and note to it before buying from FDIC) it had no standing to act on the present suit.

According to Purchase and Assumption Agreement signed on August 20, 2010, between UPB and FDIC, it stated on 9(1)Article III Purchase of Assets 3.1 stated " *** Assuming institution here by purchases from the Receiver, and Receiver hereby sells , assigns, transfers, conveys and delivers to the Assuming Institution, all rights. title, and interest of the receiver in and to all the assets...*** Notwithstanding Section 4.8, the assuming institution specifically purchases all mortgage servicing rights and obligation of the failed Bank. ". ( Exhibit ___).

Legal action without FDIC consent is a violation and incompliance , according to The

13

Agreement , 9 (2) 3.5 Legal Action; Utilization of Special l receivership Powers. " The Assuming Institution shall notify the receiver in writing ....prior to utilizing in any legal action any special legal power or right which the Assuming Institution derives as a result of having acquire an asset from the Receiver , and the Assuming Institution shall not utilize any such power unless the Receiver shall have consented in writing to the proposed usage. ..****".

47. As set forth in the initial Motion to Dismiss, a person or entity can Foreclose on a Mortgage if, and only if, that person or entity has title to both the Note and mortgage at the same time or is the Nominee or Agent of a principal that has title to both the mortgage and note at the same time . ( Long V. Coffman (1924), 231 Ill. App. 265, 270 and Barrett v. Hinckley (1888), 124 Ill. 32, 41). If the entity does not have standing and the foreclosure action must be dismissed with prejudice. ( Long v. Coffman, 2321 Ill. App, 265, 270 and People v. Capital News , Inc. ( 1990), 137 Ill. 2nd 162, 170).

48. UPB conducted a wrongful foreclosure on Ming' house , and sold her house on December 11, 2014. Because UPB failed to pay property tax on one of her property what was financed by UPB, that depleted Ming's working capital and caused her unable to pay her house note. UPB has violated Contract Law. A breach of contract, the law recognize a remedy .( Steinberg v. Chicago Medical School. 69, Ill. 2d 320, 371 N.E. 2d 634, 638; 13 Ill. (1971) ).

" The proper measure for the damages in a breach of contract case...is that amount which will place the plaintiff in the position he would have occupied had the contract been performed. " ( Alimissis v. Nanos. 171, Ill. App. 3d 1005, 1010 (1988).

49. The subject mortgage is excused : A party is excused form a duty to perform her promises and may terminate or rescind a contract if the other party has committee a prior , material

breach of contract. ( Stanley Gudyka Sales Co. v. Lacy Forest Prods. Co., 915 F. 2d 273 ( 7ᵗʰ Dis. 1990). And U.S. Fed. & Guar. Co. v. Old Orchard Ltd. P'ship, 284, Ill. App. 3d 765, 220 Ill. Dec. 59 ( 1ˢᵗ dist. 199). Because UPB failed paying property tax is a material breach of contract, therefore , the subject mortgage contract was excused.

50. Punitive Damages : An injured party may be entitled to punitive or exemplary damages where the conduct bring about the harm is willful and wanton or outrageous or where the defendant acted with actual malice, fraud , deliberate violence or gross negligence. ( Loitz v. Remington Arms Co., 138 Ill. 2d 404 (1990)).

Fifth Claim —Sheriff Sale of the house was defective ——

51. The summary judgment was entered on April 28, 2014. The notice of sale was not given to the borrower, Ming , it is a violation of Illinois Mortgage Foreclosure Law. Notice of sale of the date of 4ᵗʰ of December 2014 was not given to Ming. The sale date was switched to 11ᵗʰ day of December 2014, and that Notice of Sale was not given to Ming. And the December 11ᵗʰ, 2014 sale date was not published , since no one knows the sale date, therefore UPB was the only bidder . ( Exhibit __).

52. UPB violated 735 ILCS 5/15-1507(2), in part it states : " the Notice of sale should be published at least 3 consecutive calendar weeks ( Sunday through Saturday), one in each week, the first such notice to be published not more than 45 days prior to the sale, the last such notice to be published not less than 7dasy prior to the sale , by (i) (A) advertisement in a newspaper****".

The sale date was originally scheduled on October 23, 2014, it was postponed by UPB attorney to December 4, 2015. Then UPB attorney quietly rescheduled for December 11, 2014 ( according to the Auction Company ). Since the sale date was December 11, 2014, not more than 45 days prior was October 27, 2014, that was the earliest day UPB

15

Can publish. And not less than 7 days prior was any day before December 3th, 2014.

Here the certificate of Publication provided by UPB , they did on 9-25-1014. ( compare to the correct earliest day of 10-23-2014, it was too soon for 28 days ), and the last day UPB did on 10-9-2014 ( compare to the correct last day of before 12-3-2014, it was 54 days distance from the correct date). It was a severe violation of the IMFL code. ( Exhibit ___ ).

53. The market price of the house was $206,000.00 as PUB's own appraisal reported, but UPB skillfully kept the sale date secret for itself so they bidded the lowest price of $164,800. The sale price was short of $41,200.00 , it represent a 25% shortage of market value. UPB violated 735 ILCS 5/15-1508 , it in part states : " (i) the terms of sale were unconscionable , (iii) the sale was conducted fraudulently or (iv) justice was otherwise not done .*** " the confirmation of the sale exposed so much errors /mistakes/fraud, therefore, the sale itself contained so much errors , the sale was invalid must be vacated , it is a matter of law. ( Exhibit___ ).

54. UPB failed to attach Homeowner Notice to Summon, violated 735 ILCS 5/15-1504.5. which stated : " Homeowner notice to be attached to summons. For all residential foreclosure actions filed , the plaintiff must attach a Homeowner Notice to the summons. The Homeowner Notice must be in at least 12 point type and in English and Spanish. ****"

55. UPB violated ILCS 15-1502.5(a) Homeowner Protection. In part it states " A sustainable loan workout plan may include , but is not limited to (1) a temporary suspension of payments (2) a lengthened loan term , (3) a lower or frozen interest rate, (4) a principal write down ,(5) a repayment plan to pay the existing loan in full (6) deferred payments or (7) refinancing into an affordable loan.

On February 5th, 2015, in court , UPB counsel , Mr. John Garrity stated to the court that

16

UPB did not participate in HAMP. Ming researched on internet ,that indicated UPB Was a participant of HAMP.

56. The ILCS 15-1502.5(b) stated in part " **** no mortgagee shall file a complaint to foreclosure a mortgage secured by residential real estate until the requirement of this Section has been satisfied.

**Sixth Claim** – UPB relief /prayer was not pleaded , therefore Court did not have subject matter Jurisdiction to grant the relief.

57. On April 28, 2014, the Court Order , on XI. 3. Deficiency : " *** upon motion duly noticed ,...*** ", ( Exhibit ____ ). Here the UPB Combined Motion for approving Report of Sale, did not have any " motion duly noticed..". Naturally he Court erred by granting deficiency judgment on Order of February 5th, 2015 of $82,462. 66. ( Exhibit ____ ) The court order of February 5th, 2015 was not in compliance with Court order of April 28, 2014 due to UPB did not have " Motion of deficiency duly noticed " in Court file. A relief /prayer was not pleaded and it was required by Court Order itself of April 28, 2014, it rendered the related court Order of February 5h, 2015 in violation of the Court jurisdiction authority, therefore the Order of granting deficiency of $82,462.66 was illegal and invalid, it must be void/vacated as a matter of law.

**Seventh Claim** –UPB in violation of 735 ILCS 5/15 -1508(b)(iv), ILCS 1/14-1504, (3)(T).

58. UPB complaint filed with court failed to include 735 ILCS 5/15-1504 (3)(T) name or names of defendants whose right to possess the mortgaged real estate, after the confirmation of a foreclosure sale, is sought to be terminated and , if not elsewhere stated , the fact in support thereof, " the Court would exceed it s jurisdiction to grant relief which was not prayed for and would exceeds it s jurisdiction by confirming the sale upon such

terms.

59. For the reasons stated below, this Court would exceed its subject matter jurisdiction if it were to grant UPB relief for possession which was not prayed for. This Court must have subject matter jurisdiction before it can have the power to take any lawful action to adjudicate a claim . Subject matter jurisdiction refers to the Courts power both to adjudicate the general question involved and to grant the particular relief requested . In re A.H. 195 Ill.2d 408, 415 (2001). If a Court lacks subject matter jurisdiction, then any order entered in the matter is void ab initio. In re M.W., 232 Ill.2d 408,424 (2009); accord CPM Productions, Inc. v. Mobb Deep , Inc. 318 Ill.App.3d 369, 374 (1ˢᵗ Dist. 2000) ( Any action taken by the Circuit Court that exceeds it s jurisdiction is void " ); Suriano v. Lafeber, 386, Ill.App.3d 490, 492-93 ( 1ˢᵗ Dis. 2008).

60. A review of UPB's pleading reveals nowhere in any pleading filed before hs Court did UPB ever made any allegations relating to possession prescribed by 735 ILCS 5/15-1504(3)(t). Because the Complaint doe not present any justiciable issue relating to the possession of the property for th Court's consideration; any such judgment would be void . ( Ligon, 264 Ill. App. 3d at 706-07). Therefore, UPB's Combined Motion Pursuant to 735 ILCS 5/15-1508 for order approving Report of Sale and Distribution, Confirming Sale and Order for Possession , should be denied .

V.     Conclusion

WHERFORE, Plaintiff requests that this court enter judgment in her favor and enter such judgment as to include statutory, compensatory, punitive and exemplary damages, attorney fees, litigation expenses, including fees for expert witnesses, and costs for each cause of action in this complaint, and that the court enjoin such future

18

wrongful acts as committed by UPB, and other enjunctive relief, and that the court

grant such other and further relief as is just.

Respectfully Submitted,

Ming J. Chen
Plaintiff, Pro Se

Ming J. Chen
P O Box 378051
Chicago , IL 60637
Tel 312-718-5323

Dated : July 16th, 2015

## VERIFICATION BY CERTIFICATION
### OF
### MING J. CHEN

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure

( 735 ILCS 5/1-109), the undersigned certifies that the statements set forth in this instrument

Are true and correct, except as to matters therein stated to be on information and belief , and

as to such matters the undersigned certifies as aforesaid that I verily believe the same to be

true.

_____
Ming Chen


Dated : July 16, 2015

**EXHIBIT 3**

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $200,000.00 | 09-06-2005 | 10-01-2035 | 541777 | | | | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

Borrower: MING J. CHEN
268 BRAEMAR COURT
BOLINGBROOK, IL 60440

Lender: ShoreBank
7054 South Jeffery Blvd.
Chicago, IL 60649

Principal Amount: $200,000.00　　Interest Rate: 5.500%　　Date of Note: September 6, 2005

PROMISE TO PAY. I ("Borrower") promise to pay to ShoreBank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Hundred Thousand & 00/100 Dollars ($200,000.00), together with interest at the rate of 5.500% per annum on the unpaid principal balance from September 12, 2005, until paid in full.

PAYMENT. I will pay this loan in 360 payments of $1,135.58 each payment. My first payment is due November 1, 2005, and all subsequent payments are due on the same day of each month after that. My final payment will be due on October 1, 2035, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; and, then to any late charges. Interest on this Note is computed on a 30/365 simple interest basis; that is, with the exception of odd days in the first payment period, monthly interest is calculated by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by a month of 30 days. Interest for the odd days is calculated on the basis of the actual days to the next full month and ____ day ____ der at Lender's address shown above or at such other place as Lender may designate in writing.

PREPAYMENT. I agree that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be refunded to me upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, I may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve me of my obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in my making fewer payments. I agree not to send Lender payments marked "paid in full", "without recourse", or similar language. If I send such a payment, Lender may accept it without losing any of Lender's rights under this Note, and I will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: ShoreBank, 7054 South Jeffery Blvd., Chicago, IL 60649.

LATE CHARGE. If a payment is 16 days or more late, I will be charged 5.000% of the regularly scheduled payment.

INTEREST AFTER DEFAULT. Upon default, including failure to pay upon final maturity, the total sum due under this Note will bear interest from the date of acceleration or maturity at the interest rate on this Note. The interest rate will not exceed the maximum rate permitted by applicable law.

DEFAULT. I will be in default under this Note if any of the following happen:

Payment Default. I fail to make any payment when due under this Note.

Break Other Promises. I break any promise made to Lender or fail to perform promptly at the time and strictly in the manner provided in this Note or in any agreement related to this Note, or in any other agreement or loan I have with Lender.

Default In Favor of Third Parties. I or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of my property or my ability to repay this Note or perform my obligations under this Note or any of the related documents.

False Statements. Any representation or statement made or furnished to Lender by me or on my behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished.

Death or Insolvency. Any Borrower dies or becomes insolvent; a receiver is appointed for any part of my property; I make an assignment for the benefit of creditors; or any proceeding is commenced either by me or against me under any bankruptcy or insolvency laws.

Taking of the Property. Any creditor or governmental agency tries to take any of the property or any other of my property in which Lender has a lien. This includes taking of, garnishing of or levying on my accounts, including deposit accounts, with Lender. However, if I dispute in good faith whether the claim on which the taking of the property is based is valid or reasonable, and if I give Lender written notice of the claim and furnish Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

Defective Collateralization. This Note or any of the related documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

Collateral Damage or Loss. Any collateral securing this Note is lost, stolen, substantially damaged or destroyed and the loss, theft, substantial damage or destruction is not covered by insurance.

Events Affecting Guarantor. Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

Insecurity. Lender in good faith believes itself insecure.

LENDER'S RIGHTS. Upon default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and then I will pay that amount.

ATTORNEYS' FEES; EXPENSES. Lender may hire or pay someone else to help collect this Note if I do not pay. I will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, I also will pay any court costs, in addition to all other sums provided by law.

JURY WAIVER. Lender and I hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or me against the other.

GOVERNING LAW. This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Illinois without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Illinois.

CHOICE OF VENUE. If there is a lawsuit, I agree upon Lender's request to submit to the jurisdiction of the courts of Cook County, State of Illinois.

## PROMISSORY NOTE
### (Continued)

Loan No: 541777

RIGHT OF SETOFF. To the extent permitted by applicable law, Lender reserves a right of setoff in all my accounts with Lender (whether checking, savings, or some other account). This includes all accounts I hold jointly with someone else and all accounts I may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. I authorize Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

COLLATERAL. I acknowledge this Note is secured by the following collateral described in the security instrument listed herein: a Mortgage dated September 6, 2005, to Lender on real property located in COOK County, State of Illinois.

SUCCESSOR INTERESTS. The terms of this Note shall be binding upon me, and upon my heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES. Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: ShoreBank, 7054 South Jeffery Blvd., Chicago, IL 60649.

GENERAL PROVISIONS. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. I and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several. This means that the words "I", "me", and "my" mean each and all of the persons signing below.

ILLINOIS INSURANCE NOTICE. Unless I provide Lender with evidence of the insurance coverage required by my agreement with Lender, Lender may purchase insurance at my expense to protect Lender's interests in the collateral. This insurance may, but need not, protect my interests. The coverage that Lender purchases may not pay any claim that I make or any claim that is made against me in connection with the collateral. I may later cancel any insurance purchased by Lender, but only after providing Lender with evidence that I have obtained insurance as required by our agreement. If Lender purchases insurance for the collateral, I will be responsible for the costs of that insurance, including interest and any other charges Lender may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to my total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance I may be able to obtain on my own.

PRIOR TO SIGNING THIS NOTE, I READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. I AGREE TO THE TERMS OF THE NOTE.

I ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

X _____  9-6-05
MING J. CHEN

LASER PRO Lending, Ver. 5.27.00.005 Copr. Harland Financial Solutions, Inc. 1997, 2005. All Rights Reserved. - IL C:\LPL\CFI\LPL\D20.FC TR-9581 PR-22

---

① Endored with No date.

② Stamp signature needs authenticaty

③ Endorser said the stamp signature
was made for selly the loan
To Fannie Mae. and was did
on 2006.— Not 2010, Not 2012

ShoreBank to _____

ShoreBank _____

Daniel Hollowed                    Chief Operating Officer

"Pay to the order of _____, without recourse"

*Daniel Hollad Said the loan was Rold To Fannie Mae*

**From:** Dan Hollowed <dhollowed@cornerstonenb.com>
**To:** Rachel Chen <reinvest1208@yahoo.com>
**Sent:** Thursday, April 18, 2013 10:03 AM
**Subject:** Re: Document Signature

I can call you later, but I need to see the document in question.

Dan Hollowed
Cashier & Chief Financial Officer
Cornerstone National Bank & Trust Company

**From:** Dan Hollowed <dhollowed@cornerstonenb.com>
**To:** Rachel Chen <reinvest1208@yahoo.com>
**Sent:** Thursday, April 18, 2013 12:06 PM
**Subject:** RE: Document Signature

ShoreBank sold loans to both Fannie and Freddie.

I have no access to any information that can help you.

**Dan Hollowed**
EVP / Cashier and Chief Financial Officer
One West Northwest Highway | Palatine | IL | 60067
Phone 847.654.3015 | Fax 847.934.3886
Please visit cornerstonenb.com



**NID HOUSING
COUNSELING AGENCY**
A HUD APPROVED ORGANIZATION

January 20, 2015

Ming J Chen
268 Braemar Court
Bolingbrook, IL 60440

Loan # 541777

TO WHOM IT MAY CONCERN:

NID-HCA is a HUD Certified Counseling Agency located in Chicago, IL. Ms. Chen of the above address is currently seeking to retain ownership of her primary residence which was recently underwent legal action for foreclosure.

Ms. Chen has been counseled and has been referred to see if she is eligible to receive a HARP refinance loan on her primary property. We are asking the court if they would allow time to go through the process of the HARP refinance since according to the appraised value of her home she has equity value.

Ms. Chen has sought counseling and is doing everything to retain ownership in the property in which she has worked hard to obtain. She is getting financial help from her children to supplement her income in order to maintain her financial commitment and obligations.

I can be reached at 773-684-5273 if you have any questions.

Sincerely,

Dianne M Simmons
Loss Mitigation Advisor

Copy file

*Promoting Community Development*

6459 Cottage Grove, Chicago, Illinois 60637 • Office (773) 684-5273 • Fax (773) 684-5092
www.nidonline.org • National Office (510) 562-6573

URBAN PARTNERSHIP BANK
7054 SOUTH JEFFERY BLVD
CHICAGO, IL 60649
7732881000

## NOTICE TO THE HOME LOAN APPLICANT
### CREDIT SCORE INFORMATION DISCLOSURE

CHEN, MING JU - 4015307
268 BRAEMAR COURT
BOLINGBROOK, IL 60440

In connection with your application for a home loan, the lender must disclose to you the score that a consumer reporting agency distributed to users and the lender used in connection with your home loan, and the key factors affecting your credit scores.

The credit score is a computer generated summary calculated at the time of the request and based on information that a consumer reporting agency or lender has on file. The scores are based on data about your credit history and payment patterns. Credit scores are important because they are used to assist the lender in determining whether you will obtain a loan. They may also be used to determine what interest rate you may be offered on the mortgage. Credit scores can change over time, depending on your conduct, how your credit history and payment patterns change, and how credit scoring technologies change.

Because the score is based on information in your credit history, it is very important that you review the credit-related information that is being furnished to make sure it is accurate. Credit records may vary from one company to another.

If you have questions about your credit score or the credit information that is furnished to you, contact the consumer reporting agency at the address and telephone number provided with this notice, or contact the lender, if the lender developed or generated the credit score. The consumer reporting agency plays no part in the decision to take any action on the loan application and is unable to provide you with specific reasons for the decision on a loan application.

If you have questions regarding the terms of the loan, contact the lender.

Your credit scores were provided by the following credit reporting agencies:

| Trans Union (TU) | Experian | Equifax Credit |
|---|---|---|
| P.O. Box 1000 | P.O. Box 2002 | P.O. Box 740241 |
| Chester, PA 19022 | Allen, TX 75013 | Atlanta, GA 30374 |
| 800-888-4213 | 888-397-3742 | 800-685-1111 |
| www.transunion.com/my options | www.experian.com/reportaccess | www.equifax.com/fcra |

The following information about your credit scores was created on 9/23/2014 2:26:43 PM.

**Applicant:** CHEN, MING
**Name of Score:** EXPERIAN/FAIR, ISAAC (VER. 2)
**Credit Score:** 611  **Range:** 320 to 844
**Key Factors effecting the score**
• SERIOUS DELINQUENCY AND PUBLIC RECORD OR COLLECTION FILED
• NUMBER OF ACCOUNTS WITH DELINQUENCY
• TIME SINCE DEROGATORY PUBLIC RECORD OR COLLECTION IS TOO SHORT
• PROPORTION OF BALANCE TO HIGH CREDIT ON BANK REVOLVING OR ALL REVOLVING ACCOUNTS

*attorney Firm made the document*
*Violated Professional Rule of Conduct 3.7*

**EXHIBIT 2**

Prepared by and return to:
Chuhak & Tecson, P.C.
John K. Gerrity
30 S. Wacker Drive, Suite 2600
Chicago, Illinois 60606-7413

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖ **R2012131727**
Receipt # T20120133982

**Karen A. Stukel   Will County Recorder   6P**
JD        Date 11/26/2012        Time 13:45:16
Recording Fees:                              $26.75
IL Rental Hsng. Support Program:        $10.00

## ASSIGNMENT OF MORTGAGE

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by the parties hereto, the Federal Deposit Insurance Corporation, a corporation organized and existing under an Act of Congress, as receiver of ShoreBank, a former Illinois banking corporation ("Assignor"), as holder, hereby assigns, without recourse, to Urban Partnership Bank, an Illinois banking corporation ("Assignee") all its rights, title and interest to that certain Mortgage executed by Ming J. Chen, Manager of Green Peral Investment, LLC, General Partner of the Fu-Daw Family (1) Limited Partnership in favor of ShoreBank, dated September 6, 2005, and recorded in the Will County Recorder's Office, Will County, Illinois on September 21, 2005, as document number R 2005163087, with regards real estate described in Exhibit A attached hereto, pursuant to the Purchase and Assumption Agreement dated August 20, 2010, by and between Assignee and Assignor.

This assignment is made without recourse, representation or warranty, express or implied, by the Federal Deposit Insurance Corporation in its corporate capacity or as Receiver.

Dated this 6 day of November, 2012

*The Assignt dated 6es. November 2012,*
*after the Loan was sold on 2006.*

FEDERAL DEPOSIT INSURANCE
CORPORATION, as Receiver for ShoreBank,

By: _____
Maureen Bismark, Attorney-in-Fact

1936357\1\21457\49416

STATE OF ILLINOIS    )
                   ) ss.
COUNTY OF COOK    )

Before me, a Notary Public in and for said County and State, personally appeared Maureen Bismark who executed the foregoing instrument, and to me known as Attorney-in-Fact for the sole purpose of executing documents as provided in the Limited Power of Attorney dated August 20, 2012, and recorded on August 23, 2012, as document number 201200249808 and acknowledged that she executed the foregoing instrument in such capacity.

(Notary Seal)

*[signature: Laurie Edwards]*

Notary Public

LAURIE Edwards

**"OFFICIAL SEAL"**
Laurie Edwards
Notary Public, State of Illinois
My Commission Expires June 16, 2015

(Type or Print Name)

My commission expires: 6-16-15

*[handwritten:]* The Noty does not have #Date# Note or it is illegal and void

- 2 -

1936357\1\21457\49416

**IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT**
**WILL COUNTY, CHANCERY DIVISION**

URBAN PARTNERSHIP BANK, as assignee of the Federal Deposit Insurance
Corporation, as Receiver for ShoreBank, Plaintiff,

v.

FU-DAW FAMILY (1) LIMITED PARTNERSHIP; GREEN PEARL INVESTMENT,
LLC f/k/a GREEN PERAL INVESTMENT, LLC; MING J. CHEN; UNKNOWN OWNERS
AND NON-RECORD CLAIMANTS, Defendants

)12
)CH
)6302

Residential Foreclosure
Property Address: 268 Braemar Court, Bolingbrook, IL 60440

**NOTICE OF PUBLICATION TO UNKNOWN OWNERS AND NON RECORD CLAIMANTS**

The requisite affidavit for publication having been filed, notice is hereby given to you, Unknown Owners and
Non Record Claimants, Defendants in the above entitled suit, that the said suit has been commenced in the
Circuit Court of Cook County, Illinois, by URBAN PARTNERSHIP BANK, as assignee of the Federal Deposit
Insurance Corporation, as Receiver for ShoreBank, against you and other Defendants, praying for the
foreclosure of a certain Mortgage. The Mortgage conveying the premises described as follows, to wit:
LOT 13, IN HUNTER'S TRAIL OF BOLINGBROOK, BEING A SUBDIVISION OF PART OF THE NORTH 1/2
OF THE NORTHWEST 1/4 OF SECTION 14, TOWNSHIP 37 NORTH, RANGE 10 EAST OF THE THIRD
PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED DECEMBER 21, 1989 AS
DOCUMENT R89-67271, IN WILL COUNTY, ILLINOIS.
Common address: 268 Braemar Court, Bolingbrook, IL 60440
PIN: 02-14-107-013-0000
The Mortgage was made on September 6, 2005 by Fu-Daw Family (1) Limited Partnership, as Mortgagor to
ShoreBank, as Mortgagee and recorded on September 21, 2005, in the Office of the Recorder of Deeds in Will
County, Illinois as Document No. R 2005163087. Summons was duly issued out of the Circuit Court of Will
County against you as provided by law, and that suit is now pending.
Now, therefore, unless you, the above Defendants, file your answer to the complaint in this case or otherwise
file your appearance in the office of the Circuit Court Clerk, on or before February 15, 2013, a default may be
entered against you at any time after that day and a decree entered in accordance with the prayer of said
complaint.

Pamela J. McGuire
Clerk of the Court
14 W Jefferson, Suite 212
Joliet, Illinois 60432

YOU ARE FURTHER ADVISED THAT THE TIME IN WHICH THE SUBJECT REAL ESTATE MAY BE
REDEEMED FROM FORECLOSURE, PURSUANT TO LAW, COMMENCES TO RUN WITH THE FIRST
DATE OF PUBLICATION OF THIS NOTICE.
John K. Gerrity (ARDC #6303376)
CHUHAK & TECSON, P.C.
30 South Wacker Drive, Suite 2600, Chicago, IL 60606
(312) 855-6107
Our Billing No. 21457-49416JKG
I494847

January 16, 23, 30, 2013
Suburban Life Media 4863 BOL

*Publish on Janny 16, 2013*  1/16/13

Midwest Appraisal Consultants (630) 967-4964

Main File No. 1409015 Page #1

140912068

## Exterior–Only Inspection Residential Appraisal Report    File # 1409015

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

**SUBJECT**

| | |
|---|---|
| Property Address 268 Braemar Ct | City Bolingbrook  State IL  Zip Code 60440 |
| Borrower Ming Ju Chen | Owner of Public Record Ming Ju Chen  County Will |
| Legal Description Lot 13 in Hunter Trails of Bolingbrook, being a Sub of part of the NW1/4 of Sect 14, T37N-R10E... | |
| Assessor's Parcel # 12-02-14-107-013-0000 | Tax Year 2012  R.E. Taxes $ 6,154 |
| Neighborhood Name Hunter Trails | Map Reference 16974  Census Tract 8801.13 |
| Occupant ☒ Owner ☐ Tenant ☐ Vacant | Special Assessments $ 0  ☐ PUD  HOA $ 0  ☐ per year  ☐ per month |
| Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe) | |
| Assignment Type ☐ Purchase Transaction ☐ Refinance Transaction ☒ Other (describe) Asset Management and/or Disposition | |
| Lender/Client Urban Partnership Bank  Address 7936 S Cottage Grove Ave, Chicago, IL 60619 | |
| Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? | ☒ Yes ☐ No |
| Report data source(s) used, offering price(s), and date(s). DOM 92;See attached addenda. | |

**CONTRACT**

I ☐ did ☐ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.

| | |
|---|---|
| Contract Price $       Date of Contract       Is the property seller the owner of public record? ☐ Yes ☐ No  Data Source(s) | |
| Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? | ☐ Yes ☐ No |
| If Yes, report the total dollar amount and describe the items to be paid. | |

**NEIGHBORHOOD**

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | One-Unit Housing Trends | | One-Unit Housing | | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|
| Location ☐ Urban ☒ Suburban ☐ Rural | Property Values ☒ Increasing ☐ Stable ☐ Declining | PRICE | AGE | One-Unit | 85 % |
| Built-Up ☒ Over 75% ☐ 25-75% ☐ Under 25% | Demand/Supply ☐ Shortage ☒ In Balance ☐ Over Supply | $ (000) | (yrs) | 2-4 Unit | 0 % |
| Growth ☐ Rapid ☒ Stable ☐ Slow | Marketing Time ☐ Under 3 mths ☒ 3-6 mths ☐ Over 6 mths | 45 Low | 10 | Multi-Family | 5 % |
| | | 675 High | 80 | Commercial | 10 % |
| | | 180 Pred. | 40 | Other | 0 % |

Neighborhood Boundaries  The approximate subject neighborhood boundaries are Boughton Road to the North, Interstate 55 to the South, Interstate-355 to the East and Route 53 to the West.

Neighborhood Description  The subject property appears to be adequately served by most essentials, including; schools, shopping, and major houses of worship. An average level of maintenance is displayed throughout the area. The commercial composition and predominant price and age of the area have no adverse effect on the subject property.

Market Conditions (including support for the above conclusions)  See attached addenda.

**SITE**

| | |
|---|---|
| Dimensions 46 x 163 x 158 x 98 | Area 11083 sf  Shape Irregular  View N;Res; |
| Specific Zoning Classification R-3 | Zoning Description Single Family Residential |
| Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe) | |
| Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? | ☒ Yes ☐ No  If No, describe |

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements – Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Water | ☒ | | Street Asphalt | ☒ | ☐ |
| Gas | ☒ | | Sanitary Sewer | ☒ | | Alley None | ☐ | ☐ |

| | |
|---|---|
| FEMA Special Flood Hazard Area ☐ Yes ☒ No  FEMA Flood Zone X  FEMA Map # 17197C0058E  FEMA Map Date 09/06/1995 | |
| Are the utilities and off-site improvements typical for the market area? ☒ Yes ☐ No  If No, describe | |
| Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? ☒ Yes ☐ No  If Yes, describe | |

No apparent adverse easements, encroachments or otherwise adverse conditions were noted or observed through a visual observation. The subject backs up to Briarcliff, a main thoroughfare.

**IMPROVEMENTS**

| | |
|---|---|
| Source(s) Used for Physical Characteristics of Property ☒ Appraisal Files ☒ MLS ☒ Assessment and Tax Records ☒ Prior Inspection ☐ Property Owner | |
| ☒ Other (describe) MRED #08647658 | Data Source for Gross Living Area DuPage Township Assessor |

| General Description | General Description | Heating/Cooling | Amenities | Car Storage |
|---|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | ☐ Concrete Slab ☐ Crawl Space | ☒ FWA ☐ HWBB | Fireplace(s) # 0 | ☐ None |
| # of Stories 2 | ☒ Full Basement ☐ Finished | ☐ Radiant | Woodstove(s) # 0 | ☒ Driveway # of Cars 2 |
| Type ☒ Det. ☐ Att. ☐ S-Det./End Unit | ☐ Partial Basement ☐ Finished | ☐ Other | ☒ Patio/Deck Patio | Driveway Surface Asphalt |
| ☒ Existing ☐ Proposed ☐ Under Const. | Exterior Walls Aluminum | Fuel Gas | Porch None | ☒ Garage # of Cars 2 |
| Design (Style) Traditional | Roof Surface AsphaltShingle | ☒ Central Air Conditioning | Pool None | ☐ Carport # of Cars 0 |
| Year Built 1995 | Gutters & Downspouts Aluminum | ☐ Individual | Fence None | ☐ Attached ☐ Detached |
| Effective Age (Yrs) 15 | Window Type Double-hung | ☐ Other | Other None | ☒ Built-In |
| Appliances ☒ Refrigerator ☒ Range/Oven ☒ Dishwasher ☒ Disposal ☒ Microwave ☒ Washer/Dryer ☐ Other (describe) | | | | |
| Finished area above grade contains: 9 Rooms  5 Bedrooms  2.1 Bath(s)  1,825 Square Feet of Gross Living Area Above Grade | | | | |

Additional features (special energy efficient items, etc.)  None noted.

Describe the condition of the property and data source(s) (including apparent needed repairs, deterioration, renovations, remodeling, etc.).  C3;No functional obsolescence was observed or reported. External obsolescence is due to the subject backing up to a main thoroughfare. The quality of construction, design, and overall functional utility appear to be typical to the area.

| | |
|---|---|
| Are there any apparent physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? | ☐ Yes ☒ No |

If Yes, describe.

There did not appear to be any physical deficiencies or other adverse conditions that would affect the livability, soundness, or structural integrity of the subject property.

| | |
|---|---|
| Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? | ☒ Yes ☐ No  If No, describe. |

The design, appeal and overall use of the subject property generally conforms to the neighborhood.

EXHIBIT

Main File No. 1409015  Page #6

140912068

## Exterior-Only Inspection Residential Appraisal Report   File # 1409015

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

*[handwritten in left margin: The Market value of the house was $206,000]*

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature _Charles M. Stella (signed)_ | Signature _____ |
| Name  Charles M. Stella | Name _____ |
| Company Name  Midwest Appraisal Consultants, Inc. | Company Name _____ |
| Company Address  6240 Leonard Ave. | Company Address _____ |
| Downers Grove, IL 60516 | _____ |
| Telephone Number  (630) 710-0655 | Telephone Number _____ |
| Email Address  chuck.stella@yahoo.com | Email Address _____ |
| Date of Signature and Report  09/19/2014 | Date of Signature _____ |
| Effective Date of Appraisal  09/17/2014 | State Certification # _____ |
| State Certification #  556.001730 | or State License # _____ |
| or State License # _____ | State _____ |
| or Other (describe) _____ State # _____ | Expiration Date of Certification or License _____ |
| State  IL | |
| Expiration Date of Certification or License  09/30/2015 | SUBJECT PROPERTY |

ADDRESS OF PROPERTY APPRAISED

268 Braemar Ct

Bolingbrook, IL 60440

APPRAISED VALUE OF SUBJECT PROPERTY $   206,000

LENDER/CLIENT

Name  MountainSeed Appraisal Management, LLC

Company Name  Urban Partnership Bank

Company Address  7936 S Cottage Grove Ave, Chicago, IL 60619

Email Address _____

SUBJECT PROPERTY

☐ Did not inspect exterior of subject property

☐ Did inspect exterior of subject property from street

Date of Inspection _____

COMPARABLE SALES

☐ Did not inspect exterior of comparable sales from street

☐ Did inspect exterior of comparable sales from street

Date of Inspection _____

Freddie Mac Form 2055 March 2005          UAD Version 9/2011   Page 6 of 6          Fannie Mae Form 2055 March 2005

Form 2055UAD — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

# CERTIFICATE OF PUBLICATION

EXHIBIT I

Sale date - October 23, 2014

Copy of Notice Herein Referred to

**STATE OF ILLINOIS**
**County of Will** SS

I, Michael J. Cleary, do hereby certify that I am the publisher of the FARMERS WEEKLY REVIEW, which is now and has been for more than one year prior to the first publication of this notice hereto annexed, a weekly newspaper of general circulation, printed and published in the city of Joliet in said County, and that the said advertisement and/or notice relating to the matter of Sheriff Sale Case No. 12 CH 6302, Urban Partnership Bank vs Fu-Daw Family (1) limited Partnership, etal

has been published in said paper every week consecutively of the issues commencing September 25, A.D. 2014 and ending October 9, A.D. 2014 which are the dates of the first and last papers containing the same.

9/25/14, 10/2/14

Given under ... September, 2014.

10/9/14

Prin

Date , 2014.

By:

2 vrs 10/23

Mich

Farr

Sale date
was Oct 23rd
2014

---

the purchaser of the unit, other than a mortgagee, shall pay the assessments and legal fees required by subdivisions (g)(1) and (g)(4) of Section 9 and the assessments required by subsection (g-1) of Section 18.5 of the Illinois Condominium Property Act.

Pursuant to Local Court Rule 11.03 (J) if there is a surplus following application of the proceeds of sale, then the plaintiff shall send written notice pursuant to 735 ILCS 5/15-1512(d) to all parties to the proceeding advising them of the amount of the surplus and that the surplus will be held until a party obtains a court order for its distribution or, in the absence of an order, until the surplus is forfeited to the State.

FOR INFORMATION PLEASE CONTACT:
Chuhak & Tecson, PC.
30 S. Wacker Drive
Suite 2600
Chicago, Illinois 60606-7512
312-444-9300
312-444-9027 (Fax)
Plaintiff's Attorney

PAUL J. KAUPAS
Sheriff of Will County

Published 9/25/14, 10/2/14, 10/9/14
SHERIFF'S SALE OF REAL ESTATE at 268 Braemar Court, Bolingbrook, IL 60440 (single family home) On the 23rd day of October, 2014, to be held at 12:00 noon, at the Will County Courthouse Annex, 57 N. Ottawa Street, Room 201, Joliet, IL 60432, under Case Title: URBAN PARTNERSHIP BANK, as assignee of the Federal Deposit Insurance Corporation, as Receiver for ShoreBank, Plaintiff V. FU-DAW FAMILY (1) LIMITED PARTNERSHIP, GREEN PEARL INVESTMENT, LLC f/k/a GREEN PERAL INVESTMENT, LLC, MING J. CHEN, UNKNOWN OWNERS AND NON-RECORD CLAIMANTS, Defendant. Case No. 12 CH 6302 in the Circuit Court of the Twelfth Judicial Circuit, Will County, Illinois. Terms of Sale: ten percent (10%) at the time of sale and the balance within twenty-four (24) hours, plus, for residential real estate, a statutory judicial sale fee calculated at the rate of $1 for each $1,000 or fraction thereof of the amount paid by the purchaser to the person conducting the sale, not to exceed $300, for deposit into the Abandoned Residential Property Municipality

---

by any mortgagee, judgment creditor, or other lienor acquiring the residential real estate whose rights in and to the residential real estate arose prior to the sale. All payments shall be made in cash or certified funds payable to the Sheriff of Will County.

In the event the property is a condominium, in accordance with 735 ILCS 5/15-1507(c)(1) (H-1) and (H-2), 765 ILCS 605/9(g)(5), and 765 ILCS 605/18.5(g-1), you are hereby notified that the purchaser of the unit, other than a mortgagee, shall pay the assessments and legal fees required by subdivisions (g)(1) and (g)(4) of Section 9 and the assessments required by subsection (g-1) of Section 18.5 of the Illinois Condominium Property Act.

Pursuant to Local Court Rule 11.03 (J) if there is a surplus following application of the proceeds of sale, then the plaintiff shall send written notice pursuant to 735 ILCS 5/15-1512(d) to all parties to the proceeding advising them of the amount of the surplus and that the surplus will be held until a party obtains a court order for its distribution or, in the absence of an order, until the surplus is forfeited to the State.

For Information Please Contact: Chuhak & Tecson, PC, 30 S. Wacker Drive, Suite 2600, Chicago, Illinois 60606-7512, 312-444-9300, 312-444-9027 (Fax)

PURSUANT TO THE FAIR DEBT COLLECTION PRACTICES ACT YOU ARE ADVISED THAT THIS LAW FIRM IS DEEMED TO BE A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.
Published 9/25/14, 10/2/14, 10/9/14

---

PURSUANT TO THE FAIR DEBT COLLECTION PRACTICES ACT YOU ARE ADVISED THAT THIS LAW FIRM IS DEEMED TO BE A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.
STATE OF ILLINOIS ) ) SS.
COUNTY OF WILL )
IN THE CIRCUIT COURT OF THE
TWELFTH JUDICIAL CIRCUIT
WILL COUNTY, ILLINOIS
URBAN PARTNERSHIP BANK, as assignee of the Federal Deposit Insurance Corporation, as Receiver for ShoreBank,
Plaintiff,
vs.
FU-DAW FAMILY (1) LIMITED PARTNERSHIP, GREEN PEARL INVESTMENT, LLC f/k/a GREEN PERAL INVESTMENT, LLC, MING J. CHEN, UNKNOWN OWNERS AND NON-RECORD CLAIMANTS,
Defendant.
No. 12 CH 6302
NOTICE OF SHERIFF'S SALE
Public notice is hereby given that pursuant to a judgment entered in the above cause on the 28th day of April, 2014, PAUL J. KAUPAS, Sheriff of Will County, Illinois, will on Thursday, the 23rd day of October, 2014, commencing at 12:00 o'clock noon, at the Will County Courthouse Annex, 57 N. Ottawa Street, Room 201, Joliet, IL 60432, sell at public auction to the highest and best bidder or bidders the following-described real estate:

LOT 13, IN HUNTER'S TRAIL OF BOLINGBROOK, BEING A SUBDIVISION OF PART OF THE NORTH 1/2 OF THE NORTHWEST 1/4 OF SECTION 14, TOWNSHIP 37 NORTH, RANGE 10 EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED DECEMBER 21, 1989 AS DOCUMENT R89-67271, IN WILL COUNTY, ILLINOIS.

Commonly known as: 268 Braemar Court, Bolingbrook, IL 60440
Description of Improvements: single family home

P.I.N.: 02-14-107-013-0000
Terms of Sale: ten percent (10%) at the time of sale and the balance within twenty-four (24) hours, plus, for residential real estate, a statutory judicial sale fee calculated at the rate of $1 for each $1,000 or fraction thereof of the amount paid by the purchaser to the person conducting the sale, not to exceed $300, for deposit into the Abandoned Residential Property Municipality Relief Fund. No judicial sale fee shall be paid by the mortgagee acquiring the residential real estate pursuant to its credit bid at the sale or by any mortgagee, judgment creditor, or other lienor acquiring the residential real estate whose rights in and to the residential real estate arose prior to the sale. All payments shall be made in cash or certified funds payable to the Sheriff of Will County.

In the event the property is a condominium, in accordance with 735 ILCS 5/15-1507(c)(1)

2014 1:38PM

STATE OF ILLINOIS )
)SS.
COUNTY OF WILL )

IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT OF ILLINOIS
WILL COUNTY

URBAN PARTNERSHIP BANK, as assignee of the Federal
Deposit Insurance Corporation, as Receiver for ShoreBank,
Plaintiff,

No. 12 CH 6302

Sold for
$164,800

vs.

FU-DAW FAMILY (1) LIMITED PARTNERSHIP; GREEN
PEARL INVESTMENT, LLC f/k/a GREEN PERAL
INVESTMENT, LLC; MING J. CHEN; UNKNOWN
OWNERS AND NON-RECORD CLAIMANTS,
Defendant.

## SHERIFF'S CERTIFICATE OF SALE

I, MIKE KELLEY, Sheriff of Will County, Illinois, do hereby certify that pursuant to a Judgment made and entered by this Honorable Court in the above-entitled cause on the 28th day of April, 2014, I offered the real estate and premises described in said Judgment and hereinafter described for sale at public venue, for cash in hand, to the highest and best bidder on the 11th day of December, 2014, according to previous notice given by me as required by said judgment and by law. At the time and place stated in said notice in the City of Joliet, County of Will and State of Illinois, I first offered each tract, piece and parcel of said real estate for sale separately and then in any combinations less than the whole and having received no bid therefore I thereupon offered the entire real estate and premises for sale en masse;

Whereupon URBAN PARTNERSHIP BANK, as assignee of the Federal Deposit Insurance Corporation, as Receiver for ShoreBank, offered and bid therefore the sum of ONE HUNDRED SIXTY-FOUR THOUSAND EIGHT HUNDRED AND 00/100 DOLLARS ($164,800.00) and this being the highest and best bid at said sale, I thereupon struck off and sold the whole property to URBAN PARTNERSHIP BANK, as assignee of the Federal Deposit Insurance Corporation, as Receiver for ShoreBank, for said sum of money.

The real estate and premises are situated in Will County, Illinois, and are described as follows, to wit:

LOT 13, IN HUNTER'S TRAIL OF BOLINGBROOK, BEING A SUBDIVISION OF PART OF THE
NORTH 1/2 OF THE NORTHWEST 1/4 OF SECTION 14, TOWNSHIP 37 NORTH, RANGE 10 EAST OF
THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED

EXHIB

1 of 2

MBER 21, 1989 AS DOCUMENT R89233 IN WILL COUN...

Commonly known as: 268 Braemar Court
Bolingbrook, IL 60440

P.I.N.: 02-14-107-013-0000

The purchaser herein named, his heirs, legal representatives or assigns is entitled to a deed for said real estate .d premises upon confirmation of this sale and presentation and surrender of this Certificate to the undersigned, neriff of Will County, Illinois, or to my duly qualified and acting successor in office.

Witness my hand and seal in duplicate at Joliet, Illinois, this the 11th day of December, 2014.

*Mike Kelley*

SHERIFF OF WILL COUNTY, ILLINOIS

**PREPARED BY:**

DUNN, MARTIN, MILLER
& HEATHCOCK, LTD.
Attorneys at Law
15 West Jefferson Street
Suite 300
Joliet, Illinois 60432

After Recording, Mail to:
**PURCHASER INFORMATION:**

URBAN PARTNERSHIP BANK, as assignee of the Federal
Deposit Insurance Corporation, as Receiver for ShoreBank,
C/o Chuhak & Tecson, PC.
30 S. Wacker Drive
Suite 2600
Chicago, Illinois 60606-7512
312-444-9300
312-444-9027 (Fax)

2 of 2.

2014  1:38PM

STATE OF ILLINOIS )
                  ) SS.
COUNTY OF WILL    )

IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT OF ILLINOIS
WILL COUNTY

URBAN PARTNERSHIP BANK, as assignee of the Federal
Deposit Insurance Corporation, as Receiver for ShoreBank,
   Plaintiff,

vs.                                                    No. 12 CH 6302

FU-DAW FAMILY (1) LIMITED PARTNERSHIP; GREEN
PEARL INVESTMENT, LLC f/k/a GREEN PERAL
INVESTMENT, LLC; MING J. CHEN; UNKNOWN
OWNERS AND NON-RECORD CLAIMANTS,
   Defendants.

## RECEIPT OF SALE

RECEIVED of URBAN PARTNERSHIP BANK, as assignee of the Federal Deposit Insurance Corporation, as Receiver for ShoreBank, the sum of ONE HUNDRED SIXTY-FOUR THOUSAND EIGHT HUNDRED AND 00/100 DOLLARS ($164,800.00) pursuant to Sheriff's sale held and concluded the **11th day of December, 2014** under Judgment of Foreclosure entered on the the 28th day of **April, 2014.**

**Bid Amount:**   $164,800.00

**Common Address:**  268 Braemar Court
                       Bolingbrook, IL 60440

**Pin #:**           02-14-107-013-0000

Dated: December 11, 2014

*Mike Kelley*

MIKE KELLEY,
Sheriff of Will County, Illinois

EXHIBIT J

1 of 1

# EVANS, LOEWENSTEIN, SHIMANOVSKY & MOSCARDINI, LTD.

## ATTORNEYS AT LAW

130 S. JEFFERSON STREET, SUITE 350
CHICAGO, ILLINOIS 60661
TELEPHONE (312) 782-2585
FAX (312) 466-0823

**Of Counsel**
PETER BERK

BONITA COLEMAN
DEER & STONE, P.C.
ELZIER & MEYERSON, LLC
JEFFREY FLICKER
KERRY FORMAN
PAUL MARZANO
KATHLEEN O'KEEFE-RIVERA

*Suburban Locations*

707 SKOKIE BOULEVARD, SUITE 600
NORTHBROOK, ILLINOIS 60062

1800 NATIONS DRIVE, SUITE 117
GURNEE, ILLINOIS 60031

2020 CALAMOS COURT, SUITE 200
NAPERVILLE, ILLINOIS 60563

BY APPOINTMENT ONLY

February 16, 2011

Urban Partnership Bank
Attn: Legal Department
7936 South Cottage Grove Ave.
Chicago, Illinois 60619

> RE: **Ming Ju Chen a/k/a Rachel Chen**
> **Loan # 540716**
> **Property address: 8849 S. Princeton Ave., Chicago, Illinois**
> **PIN 24-04-206-019-000**
> **Our file # 563341**

Dear Sir or Madam

Please be advised that our office has been contacted by Ms. Rachel Chen regarding the loan number set forth above. I have been in contact with your representative Ms. Jacqueline Vargas regarding the correspondence I sent to your office on January 10, 2011. Ms. Vargas alleges that sometime in 2005, Ms. Chen contacted your bank to inform you that she sold her property and as such, your bank should no longer continue to make her property tax payments on that property. Ms. Chen informs me that she made no such phone call.

Ms. Vargas also informed me that after due diligence in 2005 your bank determined that Ms. Chen had sold the property located at 8849 S. Princeton Ave., Chicago, Illinois, PIN 25-04-206-019-0000 because she executed a quit claim deed on August 2, 2004, deeding the property to FU-DAW Family (3) Limited Partnership. However, the quitclaim deed that was executed at

this time was from Ms. Chen to her trust. Therefore, your bank should have continued to make the property tax payments for this property. Ms. Chen has made all escrow payments to your bank for this property and therefore, your bank should be responsible for redeeming the taxes prior to the end of the redemption period which will expire on April 8, 2011.

Therefore, on behalf of Ms. Chen, we hereby request that your company redeem the taxes prior to the expiration of the redemption period, including all interest and penalties, and inform Ms. Chen of your actions in writing. If you fail to comply with this request prior to the expiration of the redemption period, we shall Ms. Chen to pursue all remedies available to her. If you have any questions, please do not hesitate to contact me. This firm appreciates your prompt attention to this matter.

Sincerely,

Angela R. Fink

cc:     Ms. Rachel Chen


**SHOREBANK**
Let's change the world.

( $\bar{x}$ - 1 )

Loan:     540716    Page:   1
12/03/2009

MING JU CHEN
P O BOX 378051
CHICAGO IL   60637

Notification of Tax Escrow Disbursement(s)

Principal Balance:     86,057.80   Maturity Date:     06/01/2024
Escrow Balance:         64.83   Loan Date:       10/01/2004

** THIS NOTICE IS FOR INFORMATIONAL PURPOSES ONLY**
IN ACCORDANCE WITH THE STATE OF ILLINOIS MORTGAGE ESCROW ACCOUNT ACT,
SHOREBANK IS PROVIDING THIS NOTIFICATION REGARDING PAYMENTS MADE FROM YOUR
ESCROW ACCOUNT. IF YOUR RECORDS DISAGREE WITH OUR'S PLEASE CALL 773-420-4557

| Date | Description | Disbursement |
|------|-------------|--------------|
| 11/05/2009 | TAX PARCEL 1 - COOK COUNTY COLLECTOR | 160.64 |
| | Property Identification: 25042060180000 | |

TAX DEED NO. _____2010COTD003084_____     FILED __11/22/2010____

## TAKE NOTICE

County of Cook, State of Illinois

Date Premises Sold __8/14/2008_____

Certificate No. _____06-0017963_____

Sold for General Taxes of (year) _____2006_____

Sold for Special Assessment of _____N/A_____
                                                (municipality)
and Special Assessment Number _____N/A_____

Warrant No. _____N/A_____Installment No. _____N/A_____

### THIS PROPERTY HAS BEEN SOLD FOR DELINQUENT TAXES

Property located at _8849 S. PRINCETON AVE., CHICAGO, IL_____

Legal Description or Property Index No._____25-04-206-019-0000_____

    This notice is to advise you that the above property has been sold for delinquent taxes and that the period of redemption from the sale will expire on _____4/8/2011_.

    The amount to redeem is subject to increase at 6 month intervals from the date of sale and may be further increased if the purchaser at the tax sale or his assignee pays any subsequently accruing taxes or special assessments to redeem the property from subsequent forfeitures or tax sales. Check with the county clerk as to the exact amount you owe before redeeming:

    This notice is also to advise you that a petition has been filed for a tax deed which will transfer title and the right to possession of this property if redemption is not made on or before 4/8/2011.

    This matter is set for hearing in the Circuit Court of Cook County, Illinois at the RICHARD J. DALEY CENTER, 50 W. WASHINGTON ST., Courtroom 1704, CHICAGO, Illinois, on 4/29/2011 at 9:30 a.m. .

    You may be present at this hearing but your right to redeem will already have expired at that time.

### YOU ARE URGED TO REDEEM IMMEDIATELY TO PREVENT LOSS OF PROPERTY

    Redemption can be made at any time on or before __4/8/2011_ by applying to the County Clerk of Cook County, Illinois at the County Building, 118 NORTH CLARK STREET, ROOM 434, CHICAGO, Illinois. 60602.

For further information contact the County Clerk
Address: 118 NORTH CLARK STREET, ROOM 434, CHICAGO, IL 60602
Telephone: (312) 603-5645

Dated:_____11/24/2010_____                  _____
                                                    Clerk of the Circuit Court

DOROTHY BROWN, Clerk of the Circuit Court of Cook County



Keep this receipt as a record of your purchase.

FOR YOUR PROTECTION SAVE THIS COPY
**CASHIER'S CHECK**

**Customer Copy**

**8137359099**

03/11/2011

Illinois

Remitter **GREEN PEARL INVESTMENT LLC**

$ **\*\*\*\*\*\*\*\*\*\*7,114.54** **\*\*\***

Pay To The
Order Of **COOK COUNTY CLERK**

Drawer: **JPMORGAN CHASE BANK, N.A.**
**NON NEGOTIABLE**

TERMS
KEEP THIS COPY FOR YOUR RECORD OF THE TRANSACTION.
PLEASE CONTACT CHASE TO REPORT A LOSS OR FOR ANY OTHER INFORMATION ABOUT THIS ITEM.

Ming Chen
P O Box 378051
Chicago, IL 60637
Tel 773-538-5267

July 7, 2011

Loan Operations
Urban Partnership Bank
P O Box 19260
Chicago, IL 60619-0260

Re : non-pay property & Tax sale redemption reimbursement
 Loan # 540716

To Whom It May Concern:

I had mailed to you a letter dated June 9th , 2011, ( a copy attached ). Asking you to reimburse me the Tax sale reimbursement . But did not hear from you .

Your silent to me meant that you Admit your wrong doing. I am giving you another 10 days to cure this fault. By July 21, 2011, if you still do not cure this issue, I will be forced to take a legal action to remedy the damages that you caused me .

Sincerely,

Ming Chen

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Loan operations
uRBan partnership Bank
P. Box 19260
CHilNGo, IL bob19-
                    0260

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____

B. Received by ( Printed Name) | C. Date

D. Is delivery address different from item 1?
If YES, enter delivery address below:

3. Service Type
  - ☒ Certified Mail   ☐ Express Mail
  - ☐ Registered       ☐ Return Receipt for Me
  - ☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐

2. Article Number
(Transfer from service label)   7011 0470 0000 1740 7687

PS Form 3811, February 2004     Domestic Return Receipt     10259

Ming Chen
P O Box 378051
Chicago, IL 60637
Tel 773-538-5267

June 9, 2011

Loan Operation
Urban Partnership Bank
P O Box19260
Chicago, IL 60619-0260

RE : non-paid property tax & Tax sale redemption reimbursement
Loan #540716- 8849 S. Princeton Ave, Chicago, IL 60620

To Whom It May Concern:

This letter is to inform you that on the above Loan number , since 2004, I took out the Loan from South Shore Bank, I have been escrowing property tax , and paid monthly payment on time with no default at all.

Suddenly, the county noticed me that the subject property was sold thru Delinquent Tax Sale . and needed to be redeemed by 4-8-2011.

I went in Cook county , paid $7,114.54 +$10 =$7,124.54 to redeem it. Obviously it was your bank's mistake in some way of defaulting the property tax , caused balances and penalties, a substantial damages.

I am requesting that you pay me back the $7,124.54 to cure your error. If I do not hear from you on or before June 23, 2011, I will assume that you have no intension of solving this issue, then a legal action should be initiated.

Sincerely,

Ming Chen

Enclosures

---

SENDER: COMPLETE THIS SECTION

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Loan operation
URBAN Partnership BK
P. O. Box 1-2060

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X Craig Moore

B. Received by ( Printed Name)
Craig Moore

C. Da

D. Is delivery address different from item 1?
If YES, enter delivery address below:

2.4 **Employee Plans.** Except as provided in Section 4.12, the Assuming Institution shall have no liabilities, obligations or responsibilities under the Failed Bank's health care, bonus, vacation, pension, profit sharing, deferred compensation, 401K or stock purchase plans or similar plans, if any, unless the Receiver and the Assuming Institution agree otherwise subsequent to the date of this Agreement.

## ARTICLE III
## PURCHASE OF ASSETS

3.1 **Assets Purchased by Assuming Institution.** With the exception of certain assets expressly excluded in Sections 3.5 and 3.6, the Assuming Institution hereby purchases from the Receiver, and the Receiver hereby sells, assigns, transfers, conveys, and delivers to the Assuming Institution, all right, title, and interest of the Receiver in and to all of the assets (real, personal and mixed, wherever located and however acquired) including all subsidiaries, joint ventures, partnerships, and any and all other business combinations or arrangements, whether active, inactive, dissolved or terminated, of the Failed Bank whether or not reflected on the books of the Failed Bank as of Bank Closing. Assets are purchased hereunder by the Assuming Institution subject to all liabilities for indebtedness collateralized by Liens affecting such Assets to the extent provided in Section 2.1. Notwithstanding Section 4.8, the Assuming Institution specifically purchases all mortgage servicing rights and obligations of the Failed Bank.

*Mortgage Servicing Right*

3.2 **Asset Purchase Price.**

(a) All Assets and assets of the Failed Bank subject to an option to purchase by the Assuming Institution shall be purchased for the amount, or the amount resulting from the method specified for determining the amount, as specified on Schedule 3.2, except as otherwise may be provided herein. Any Asset, asset of the Failed Bank subject to an option to purchase or other asset purchased for which no purchase price is specified on Schedule 3.2 or otherwise herein shall be purchased at its Book Value. Loans or other assets charged off the Accounting Records of the Failed Bank before the Bid Valuation Date shall be purchased at a price of zero.

(b) The purchase price for securities (other than the capital stock of any Acquired Subsidiary, Shared-Loss Securities, FRB and FHLB stock) purchased under Section 3.1 by the Assuming Institution shall be the market value thereof as of Bank Closing, which market value shall be (i) the market price for each such security quoted at the close of the trading day effective on Bank Closing as published electronically by Bloomberg, L.P., or alternatively, at the discretion of the Receiver, IDC/Financial Times (FT) Interactive Data; (ii) provided, that if such market price is not available for any such security, the Assuming Institution will submit a bid for each such security within three days of notification/bid request by the Receiver (unless a different time period is agreed to by the Assuming Institution and the Receiver) and the Receiver, in its sole discretion will accept or reject each such bid; and (iii) further provided in the absence of an acceptable bid from the Assuming Institution, each such security shall not pass to the Assuming Institution and shall be deemed to be an excluded asset hereunder.

(c) Reserved.

**3.3** **Manner of Conveyance; Limited Warranty; Nonrecourse; Etc.** THE CONVEYANCE OF ALL ASSETS, INCLUDING REAL AND PERSONAL PROPERTY INTERESTS, PURCHASED BY THE ASSUMING INSTITUTION UNDER THIS AGREEMENT SHALL BE MADE, AS NECESSARY, BY RECEIVER'S DEED OR RECEIVER'S BILL OF SALE, "AS IS", "WHERE IS", WITHOUT RECOURSE AND, EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THIS AGREEMENT, WITHOUT ANY WARRANTIES WHATSOEVER WITH RESPECT TO SUCH ASSETS, EXPRESS OR IMPLIED, WITH RESPECT TO TITLE, ENFORCEABILITY, COLLECTIBILITY, DOCUMENTATION OR FREEDOM FROM LIENS OR ENCUMBRANCES (IN WHOLE OR IN PART), OR ANY OTHER MATTERS.

*[handwritten: FDIC does not Waranty]*

**3.4** **Puts of Assets to the Receiver.**

(a) **Puts Within 30 Days After Bank Closing**. During the thirty (30)-day period following Bank Closing and only during such period (which thirty (30)-day period may be extended in writing in the sole absolute discretion of the Receiver for any Loan), in accordance with this Section 3.4, the Assuming Institution shall be entitled to require the Receiver to purchase any Deposit Secured Loan transferred to the Assuming Institution pursuant to Section 3.1 which is not fully secured by Assumed Deposits or deposits at other insured depository institutions due to either insufficient Assumed Deposit or deposit collateral or deficient documentation regarding such collateral; provided with regard to any Deposit Secured Loan secured by an Assumed Deposit, no such purchase may be required until any Deposit setoff determination, whether voluntary or involuntary, has been made; and,

at the end of the thirty (30)-day period following Bank Closing and at that time only, in accordance with this Section 3.4, the Assuming Institution shall be entitled to require the Receiver to purchase any remaining overdraft transferred to the Assuming Institution pursuant to 3.1 which both was made after the Bid Valuation Date and was not made pursuant to an overdraft protection plan or similar extension of credit.

Notwithstanding the foregoing, the Assuming Institution shall **not** have the right to require the Receiver to purchase any Loan if (i) the Obligor with respect to such Loan is an Acquired Subsidiary, or (ii) the Assuming Institution has:

(A) made any advance in accordance with the terms of a Commitment or otherwise with respect to such Loan;

(B) taken any action that increased the amount of a Related Liability with respect to such Loan over the amount of such liability immediately prior to the time of such action;

(C) created or permitted to be created any Lien on such Loan which secures indebtedness for money borrowed or which constitutes a conditional sales agreement, capital lease or other title retention agreement;

(v) retain sufficient staff to perform its duties hereunder; and

(vi) provide written notification in accordance with Article IV of this Commercial Shared-Loss Agreement immediately after the execution of any contract pursuant to which any third party (other than an Affiliate of the Assuming Institution) will manage, administer or collect any of the Shared-Loss Securities, together with a copy of that contract.

(b) Any transaction with or between any Affiliate of the Assuming Institution with respect to any Shared-Loss Security including, without limitation, the execution of any contract pursuant to which any Affiliate of the Assuming Institution will manage, administer or collect any of the Shared-Loss Assets, or any other action involving self-dealing, shall be subject to the prior written approval of the Receiver or the Corporation.

(c) The Assuming Institution shall not contract with third parties to provide services the cost of which would be a Reimbursable Expense or Recovery Expense if the Assuming Institution would have provided such services itself if the relevant Shared-Loss Assets were not subject to the loss-sharing provisions of Section 2.1 of this Commercial Shared-Loss Agreement.

**3.4    Records and Reports.** The Assuming Institution shall establish and maintain records on a separate general ledger, and on such subsidiary ledgers as may be appropriate to account for the Shared-Loss Assets and the Shared-Loss Securities, in such form and detail as the Receiver or the Corporation may require, to enable the Assuming Institution to prepare and deliver to the Receiver or the Corporation such reports as the Receiver or the Corporation may from time to time request regarding the Shared-Loss Assets, the Shared-Loss Securities and the Quarterly Certificates required by Section 2.1 of this Commercial Shared-Loss Agreement.

**3.5    Related Loans.**

(a)    The Assuming Institution shall not manage, administer or collect any "Related Loan" in any manner which would have the effect of increasing the amount of any collections with respect to the Related Loan to the detriment of the Shared-Loss Asset to which such loan is related. A "Related Loan" means any loan or extension of credit held by the Assuming Institution at any time on or prior to the end of the final Recovery Quarter that is: (i) made to the same Obligor with respect to a Loan that is a Shared-Loss Asset or with respect to a Loan from which Other Real Estate, or Additional ORE derived, or (ii) attributable to the same primary Obligor with respect to any Loan described in clause (i) under the rules of the Assuming Institution's Chartering Authority concerning the legal lending limits of financial institutions organized under its jurisdiction as in effect on the Commencement Date, as applied to the Assuming Institution.

(b)    The Assuming Institution shall prepare and deliver to the Receiver with the Quarterly Certificates for the Calendar Quarters ending June 30 and December 31 for all Shared-Loss Quarters and Recovery Quarters, a schedule of all Related Loans which are commercial loans or commercial real estate loans with Legal Balances of $5,000,000 or more on the Accounting Records of the Assuming Institution as of the end of each such semi-annual period, and all other commercial loans or commercial real estate loans attributable to the same Obligor on such loans of $5,000,000 or more.

**3.6    Legal Action; Utilization of Special Receivership Powers.** The Assuming Institution shall notify the Receiver in writing (such notice to be given in accordance with Article IV below and to include all relevant details) prior to utilizing in any legal action any special legal power or right which the Assuming Institution derives as a result of having acquired a Shared-Loss Asset from the Receiver, and the Assuming

*[handwritten margin note: Notify Receiver in writing about Foreclosure]*

Module 1   Whole Bank w Loss Share   P&A
Version 2.08
July 15 2010

128

ShoreBank
Chicago, Illinois

*Receiver shall consent in writing*

Institution shall not utilize any such power unless the Receiver shall have consented in writing to the proposed usage. The Receiver shall have the right to direct such proposed usage by the Assuming Institution and the Assuming Institution shall comply in all respects with such direction. Upon request of the Receiver, the Assuming Institution will advise the Receiver as to the status of any such legal action. The Assuming Institution shall immediately notify the Receiver of any judgment in litigation involving any of the aforesaid special powers or rights.

3.7 **Third Party Servicer**. The Assuming Institution may perform any of its obligations and/or exercise any of its rights under this Commercial Shared-Loss Agreement through or by one or more Third Party Servicers, who may take actions and make expenditures as if any such Third Party Servicer was the Assuming Institution hereunder (and, for the avoidance of doubt, such expenses incurred by any such Third Party Servicer on behalf of the Assuming Institution shall be Reimbursable Expenses or Recovery Expenses, as the case may be, to the same extent such expenses would so qualify if incurred by the Assuming Institution); provided, however, that the use thereof by the Assuming Institution shall not release the Assuming Institution of any obligation or liability hereunder.

## ARTICLE IV — PORTFOLIO SALE

4.1 **Assuming Institution Portfolio Sales of Remaining Shared-Loss Assets**. The Assuming Institution shall have the right with the consent of the Receiver, commencing as of the first day of the third to last Shared-Loss Quarter, to liquidate for cash consideration, in one or more transactions, all or a portion of Shared-Loss Assets held by the Assuming Institution ("Portfolio Sales"). If the Assuming Institution exercises its option under this Section 4.1, it must give thirty (30) days notice in writing to the Receiver setting forth the details and schedule for the Portfolio Sale which shall be conducted by means of sealed bid sales to third parties, not including any of the Assuming Institution's affiliates, contractors, or any affiliates of the Assuming Institution's contractors.

4.2 **Calculation of Sale Gain or Loss**. For Shared-Loss Assets gain or loss on the sales under Section 4.1 will be calculated as the aggregate sales price received by the Assuming Institution less the aggregate book value of the remaining Shared-Loss Assets.

## ARTICLE V — LOSS-SHARING NOTICES GIVEN TO CORPORATION AND/OR RECEIVER

As a supplement to the notice provisions contained in Section 13.7 of the Purchase and Assumption Agreement, any notice, request, demand, consent, approval, or other communication (a "Notice") given to the Corporation and/or the Receiver in the loss-sharing context shall be given as follows:

5.1 With respect to a Notice under Section 2 and Sections 3.1-3.5 of this Commercial Shared-Loss Agreement:

Federal Deposit Insurance Corporation
Division of Resolutions and Receiverships
550 17th Street, N.W.
Washington, D.C. 20429

Attention: Assistant Director, Franchise and Asset Marketing

Module 1 Whole Bank w/ Loss Share P&A
Version 2.08
July 15, 2010

129

ShoreBank
Chicago, Illinois